IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No.  12-74-GMS |
| | ) |
| BEKIR BULUC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM

### I.      INTRODUCTION

The defendant Bekir Buluc (previously known as Bekir Celebi) is a citizen of Turkey who has been deported or removed from the United States by the government four times.  On or about September 4, 2012, Immigration & Customs Enforcement ("ICE") agents apprehended the defendant in Dover, Delaware.  (D.I. 1.)  The next day a Criminal Complaint was filed against the defendant, (*id.*), and on September 25, 2012, he was charged in a one count Indictment with illegal reentry in violation of 8 U.S.C § 1326(a), (D.I. 7).  Presently before the court is the defendant's Motion to Dismiss the Indictment, which argues that the underlying *in absentia* deportation order is constitutionally invalid and cannot serve as a basis for the government's section 1326 prosecution because the defendant never received notice of the deportation hearing.  (D.I. 24.)  For the reasons that follow, the court denies the motion.

### II.     BACKGROUND

On March 11, 1992, the defendant obtained a tourist visa under the name Bekir Celebi and entered the United States.  (D.I 24 at 2.)  On November 30, 1993, the defendant executed an

asylum application seeking asylum due to a fear of retaliation and persecution in his home country of Turkey for an incident that occurred while he was a mandatory member of the Turkish army. (*Id.*) The defendant hired an attorney, Sheldon Walker, to represent him in the asylum proceedings. The asylum application was filed with United States Citizenship and Immigration Services ("USCIS") on January 27, 1994, but it appears that USCIS did not process the application and the defendant never received notice of an asylum hearing. (*Id.*)

On January 11, 1994, the defendant was apprehended for overstaying his tourist visa and personally served with an Order to Show Cause. (*Id.*) The Order to Show Cause informed the defendant that he would receive a hearing, and that a separate notice advising him of the date and time of the hearing would be "mailed to the address provided by the [defendant]."[1] (D.I. 24, Ex. B.) At the time of his arrest, the defendant provided 2504 Perkiomen Avenue, Mt. Penn, Pennsylvania as his address. (*Id.*)

A deportation hearing was scheduled for May 11, 1994. On April 19, 1994, a Notice of Hearing that had been mailed to the defendant's address was returned as unclaimed. The deportation hearing was rescheduled for June 21, 1994 and a new notice was mailed to the same address, but it returned as unclaimed on June 9, 1994. (*Id.* at 3.) The defendant failed to appear at the June 21, 1994 hearing and the Immigration Judge ordered the defendant deported *in absentia.* (*Id.* at 4.) On June 23, 1994, the defendant *did* receive notice of the Immigration

---

[1] Notably, the Order to Show Cause stated:

You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the Office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative. If you fail to appear at the scheduled deportation hearing, you will be ordered deported in your absence if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

(D.I. 24, Ex. B.)

Judge's Order by certified mail at the 2504 Perkiomen Avenue address. (D.I. 27, Ex. 1.)

On November 2, 1995, the defendant was apprehended by Immigration and Naturalization Service ("INS") agents and arrested. He provided a new address at the time of his arrest, but stated that he resided at 2504 Perkiomen Avenue until October 1994. (*Id.*, Ex. 2.) While he was detained, the defendant's counsel, Guy T. O'Donnell, filed a Motion to Reopen Asylum Petition and for Stay of Deportation. However, O'Donnell incorrectly sent the Motion to the INS Department and it was not received by the Immigration Court until November 22, 1995, five days after the defendant had been deported on November 17, 1995. (D.I. 24 at 4; D.I. 30 at 2.)

While in Turkey, the defendant legally changed his name to Bekir Buluc. He obtained another tourist visa on July 17, 1996 and returned to the United States. (D.I. 24 at 4.) The defendant subsequently married a US citizen and from 1998 through 2010 attempted to adjust his immigration status. (*Id.* at 5.) In his applications, however, the defendant certified that he had never been deported from the United States, and in one instance filed a handwritten affidavit that he had "never been arrested," "never been handcuffed," and was only fingerprinted in connection with a 1997 green card application. (D.I. 27 at 3; *id.*, Exs. 3, 4.)

On May 6, 2010, the defendant was arrested in Greenwood, Delaware, and ordered removed for overstaying his 1996 visa (issued to Bekir Buluc). (*Id.* at 4.) ICE processed that deportation order without regard to the defendant's first deportation in 1994. (*Id.*, Ex. 6.) On July 13, 2010, he was served a Warrant of Removal/Deportation and deported to Turkey for the second time. (D.I. 24 at 5.)

The defendant returned to the United States for the third time, and was arrested in the

Southern District of Texas on December 20, 2010. He pled guilty to a misdemeanor charge for improper entry by an alien and was sentenced to ten days incarceration. On February 10, 2011, he refused to board the airplane for his deportation and was placed in custody of ICE. The defendant claimed a fear of returning to Turkey. (D.I. 27 at 4.) Shortly thereafter, he retained legal counsel, Jorge Trevino, to assist him in resolving the June 21, 1994 *in absentia* deportation order. (D.I. 24 at 5.)

On June 27, 2011, the defendant was provided a Reasonable Fear Hearing. (D.I. 27 at 4.) The defendant's counsel, Trevino, did not submit any evidence to USCIS on behalf of the defendant, and did not physically attend the scheduled Reasonable Fear Hearing. (D.I. 24 at 5-6.) Rather, Trevino was teleconferenced into the hearing at some point after it began. (*See* D.I. 24 at 6; D.I. 27 at 4.) The asylum officer stated that the defendant's testimony was "sufficiently detailed, consistent and plausible in material respects and therefore is found credible," but determined that there was "no reasonable fear of persecution . . . [or] torture established." (D.I. 27, Ex. 7.) On August 25, 2011, an immigration judge reviewed the reasonable fear proceedings, affirmed the asylum officer's decision, and ordered the case returned for removal proceedings. (*Id.*, Ex. 8.)

Immigration officials reinstated the June 21, 1994 deportation order, served the defendant a Warrant of Removal/Deportation, and the defendant was removed to Turkey for the third time on October 19, 2011. Less than two weeks later, on October 31, 2011, the defendant was apprehended by Border Patrol Agents. On December 6, 2011, the defendant was served with a Warrant of Removal/Deportation and removed to Turkey for the fourth time. On September 4, 2012, the defendant was apprehended by ICE agents. That arrest led to the instant Indictment.

(D.I. 24 at 6.)

On November 20, 2013, after the briefing for the instant motion to dismiss was complete, the Executive Office for Immigration Review denied the defendant's recently filed motion to rescind the June 21, 1994 deportation order and reopen the immigration proceedings.

## III.   STANDARD OF REVIEW

"Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances." *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2009) (citing *United States v. Torres*, 383 F.3d 92, 98 (3d Cir. 2004)).  An alien who collaterally challenges a previous deportation order or proceeding must prove three distinct requirements: (1) he exhausted any available administrative remedies to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. *Richardson v. United States*, 558 F.3d 216, 223 (3d Cir. 2009); 8 U.S.C. § 1326(d).  All three of these requirements must be met in order to mount a successful challenge. *Torres*, 383 F.3d at 99.

## IV.   DISCUSSION

The defendant argues that he should be excused from section 1326(d)(1)'s administrative exhaustion requirement because (1) he never received notice of the June 1994 deportation hearing; (2) immigration officials did not properly process his asylum petition; and (3) in November 1995, his counsel misfiled a motion to reopen the June 1994 immigration proceedings. (D.I. 24 at 12-13.)  Similarly, he contends that combination of mistakes, and the ineffective legal counsel he received at the Reasonable Fear Hearing, deprived him of a

meaningful opportunity for judicial review under section 1326(d)(2), because he never had the opportunity to resolve the originally defective deportation order.  (D.I. 24 at 14-15.)

The court notes that the Third Circuit has yet to determine "whether the [section 1326(d)(1)] exhaustion requirement is prudential, and therefore subject to exception, or jurisdictional."  *Richardson*, 558 F.3d at 223 n.7.  In addition, the Third Circuit has not "definitively determined" what constitutes an effective denial of judicial review under section 1326(d)(2).  *Charleswell*, 456 F.3d at 355 (citing *Torres*, 383 F.3d at 102-03).  Nevertheless, the court can resolve the defendant's collateral challenge because "it suffers from a more obvious defect -- he cannot establish that his removal order was 'fundamentally unfair' as required by section 1326(d)(3)."  *Torres*, 383 F.3d at 102.

In determining whether the underlying removal proceedings were "fundamentally unfair," courts focus on "whether the alien was denied due process."  *Id.* at 102.  Further, the alien must also establish that "as a result of that fundamental error he suffered some prejudice."  *Charleswell*, 456 F.3d at 358.  In an unpublished decision, the Third Circuit has found that ineffective assistance of counsel "can result in a denial of due process if counsel's performance was so deficient so as to prevent an alien from reasonably presenting his case." *United States v. Perez*, 459 Fed. Appx. 191, 195-96 (3rd Cir. 2012) (citing *Rranci v. Att'y Gen. of the U.S.*, 540 F.3d 165, 175 (3rd Cir. 2008)).  In the immigration context, the *Perez* Court stated that an alien must satisfy a two part test to establish a due process claim based on an attorney's ineffectiveness -- he must prove "(1) whether competent counsel would have acted otherwise, and, if yes, (2) whether the alien was prejudiced by counsel's poor performance." *Id.* at 196 (quoting *Rranci*, 540 F.3d at 175).  "For an alien to demonstrate that he suffered prejudice due to

his counsel's unprofessional errors, he must show that there was a 'reasonable likelihood that the result would have been different if the error[s] . . . had not occurred.'" *Rranci*, 540 F.3d at 175-76 (quoting *Fadiga v. AG of the United States*, 488 F.3d 142, 159 (3d Cir. 2007)). The pertinent "reasonable likelihood" standard for an asylum petition "means merely showing a realistic chance that the petitioner can at a later time establish that asylum should be granted." *Fadiga*, 488 F.3d at 160 (citing *Guo v. Ashcroft*, 386 F.3d 556, 564 (3d Cir. 2004)). In addition, the "reasonable likelihood" standard for a motion to reopen is whether the "outcome of [the alien's] hearing in the Immigration Court would have been different absent the errors allegedly made by his counsel." *Id.*

Here, the defendant contends that he had a legitimate claim to asylum in 1993, but his counsels' ineffective assistance denied him due process and prejudiced him greatly. (D.I. 24 at 16.) The ineffective assistance of counsel arguments turn on two alleged procedural defects: (1) Walker's filing of the defendant's asylum petition in January 1994 after he had been apprehended by INS officials; and (2) O'Donnell's November 1995 misfiled motion to reopen the defendant's *in absentia* deportation order. (*Id.* at 16-17.) The court finds that neither of the alleged procedural defects prejudiced the defendant because subsequent hearings squarely addressed his claims and denied him relief.

Specifically, the June 2011 Reasonable Fear Hearing, and August 2011 judicial review, denied the defendant's asylum petition. (*See* D.I. 27, Exs. 7, 8.) The defendant asserts that a more favorable result would have been likely if his Petition for Asylum was heard in 1993 because the threat to him was closer in time. (D.I. 30 at 2.) While that may have some intuitive logic, the defendant did not provide a transcript of the hearing, which would have allowed for a

meaningful review of counsel's performance and the arguments presented on the defendant's behalf. As a result, the court will not question an immigration judge's review of the Reasonable Fear Hearing based merely on attorney argument. Accordingly, the court finds that the defendant cannot satisfy the "reasonable likelihood" standard for an asylum petition because he did not establish "at a later time . . . that asylum should be granted." *See Fadiga*, 488 F.3d at 160.

Similarly, the defendant cannot establish the "reasonable likelihood" of a different result with respect to his motion to reopen. The Immigration Court recently denied a new motion by the defendant to rescind his *in absentia* deportation order and reopen the immigration proceedings. *In re Celebi*, No. A 070-851-359 (Executive Office for Immigration Review November 30, 2013). The court rejected the defendant's "lack of notice" argument premised on the fact that he did not receive the hearing notices, which were sent to his last known address. It noted that he was personally served an Order to Show Cause that included warnings of the consequences for failure to appear as well as the obligation to apprise the Immigration Court of any changes of address within five days. The court found that the defendant had an opportunity to be present, was on notice that he was to inform the court of any change of address, and could not complain that he did not receive the hearing notices. Therefore, the court held that notice to his last known address by certified mail was sufficient to meet the statutory requirements as well as due process, and that the defendant could not avoid his obligation to appear by failing to notify the Immigration Court of an address change, or by failing to pick up certified mail at the post office.[2]

---

[2] The Immigration Court noted that the defendant submitted as part of his motion to reopen an asylum application filed about two weeks after he was personally served with the Order to Show Cause.

8

Accordingly, the court finds that defendant cannot mount a successful collateral attack to his deportation order because he did not show that entry of the deportation order was fundamentally unfair under 8 U.S.C. § 1326(d)(3).

## V.   CONCLUSION

For the reasons stated above, the court denies the defendant's motion.

Dated: July __1__, 2014

_____
UNITED STATES DISTRICT JUDGE

---

The asylum application did not have any impact on the court's ultimate decision to deny the defendant's motion. Indeed, the court highlighted the fact that the asylum application reflected a different address than the Order to Show Cause, but the defendant nonetheless ignored his obligation to notify the Immigration Court of a change of address.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,         )
                                )
        Plaintiff,         )
                                )
        v.                 )     Criminal Action No.  12-74-GMS
                                )
BEKIR BULUC,              )
                                )
        Defendant.        )
                                )

## ORDER

At Wilmington, this 1st day of July, 2014,

IT IS HEREBY ORDERED THAT the defendant's Motion to Dismiss the Indictment (D.I. 24) is DENIED.

UNITED STATES DISTRICT JUDGE